**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JASON MORANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>REDFIN CORPORATION, ROCKET COMPANIES, INC., DAVID H. LISSY, GLENN KELMAN, ROBERT BASS, JULIE BORNSTEIN, KERRY D. CHANDLER, AUSTIN LIGON, BRAD SINGER, JAMES SLAVET, and SELINA TOBACCOWALA,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jason Morano ("Plaintiff"), by his undersigned attorneys, for this Class Action Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel and review of publicly available documents, as to all other allegations herein, as follows:

## **NATURE OF THE ACTION**

1.      Plaintiff brings this securities class action on behalf of himself and the other public stockholders of Redfin Corporation ("Redfin" or the "Company"), against Redfin, the members of the Company's board of directors (the "Board" or the "Individual Defendants") and Rocket Companies, Inc. ("Rocket") for (i) violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 (the "federal claims"), and (ii) breaches of their fiduciary duties under Delaware law (the "state claim"). Plaintiff's federal and state claims arise in connection with the proposed merger (the "Proposed Merger") between Redfin and Rocket Companies, Inc. ("Rocket").

2.      On March 9, 2025, Redfin entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Redfin will merge with Rocket, and Redfin shareholders will receive 0.7926 shares of Rocket Class A common stock for each share of Redfin common stock that they currently own (the "Merger Consideration"). Upon the completion of the Proposed Merger, Redfin stock will no longer be publicly traded.

3.      On May 5, 2025, to persuade Redfin stockholders to vote in favor of the Proposed Merger at a special meeting ("Special Meeting") to be held on June 4, 2025 ("Stockholder Vote"), Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement on Schedule 14A ("Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Section 14(a)/Rule 14a-9, and in breach of their fiduciary duties under Delaware law.

4.      The Proxy suffers from two material disclosure violations ("Disclosure Violations"). *First*, the Proxy contains materially omissive and misleading information concerning a conflict faced by Redfin's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

Investment Banking"), as a result of a concurrent lending relationship between Goldman Sachs Bank USA ("Goldman Sachs Bank") and Rocket.[1]

5.    In particular, at page 58, the Proxy vaguely discloses without any detail whatsoever that "Goldman Sachs Investment Banking has an existing lending relationship with Rocket and/or its subsidiaries." The Proxy also discloses that "[d]uring the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has *not* been engaged by Rocket or its affiliates to provide financial advisory or underwriting services *for which Goldman Sachs has recognized compensation*."[2] From the language above, it is unclear the extent to which Goldman Sachs has received and continues to receive compensation from Rocket for lending services while simultaneously being compensated to serve as Redfin's financial advisor in negotiations against Rocket in connection with the Proposed Merger.

6.    In order to allow Redfin shareholders to contextualize the potential conflict posed by Goldman Sachs' concurrent lending relationship with Rocket, the Proxy must disclose (i) the nature of the lending relationship between Goldman Sachs and Rocket, and (ii) the sums paid to Goldman by Rocket in connection with that relationship during the two years prior to March 9, 2025 (the date of Goldman Sachs' fairness opinion ("Fairness Opinion") to the Board in connection with the Proposed Merger). Currently, the Proxy discloses none of that information, and is therefore materially deficient.

---

[1] Both Goldman Sachs Investment Banking and Goldman Sachs Bank are wholly owned subsidiaries of The Goldman Sachs Group, Inc., the top-level holding company for Goldman Sachs entities. Plaintiff refers to Goldman Sachs Group, Inc. and its subsidiaries as "Goldman Sachs".
[2] As further discussed below, "Goldman Sachs Investment Banking" is not a defined term in the Proxy, so it is unclear whether the Proxy uses the term to refer to "Goldman Sachs & Co. LLC", as Plaintiff does here.

7.      Rocket's SEC filings show that Rocket entered into a Revolving Credit Agreement dated July 2, 2024, which provided Rocket with access to a $1.15 billion revolving credit facility funded by Goldman Sachs and other lenders ("the Revolver"). The amount committed by Goldman Sachs to the facility is redacted from Schedule 2.01A of the public version of the Revolver, and thus it is impossible to determine the magnitude of Goldman Sachs' lending commitment to Rocket.[3]

8.      The Revolver requires Rocket to pay interest to Goldman Sachs and the other lenders on outstanding balances under the Revolver. But according to Rocket's Form 10-K for 2024 (at page 99), there was no outstanding balance on the Revolver as of December 31, 2024.[4] In such circumstance, the Revolver still requires Rocket to pay commitment fees to Goldman Sachs and the other lenders for undrawn amounts.[5]

---

[3] *See* Revolving Credit Agreement dated July 2, 2024 (available at: https://www.sec.gov/Archives/edgar/data/1805284/000180528424000137/exhibit106rocketmortgage-r.htm. The Revolver appears to have replaced a facility under a Revolving Credit Agreement dated August 10, 2022, under which Goldman and other lenders committed to provide Rocket with a revolving credit facility of $1.0 billion with a maturity date of August 10, 2025. *See* Rocket Form 10-K for year ending December 31, 2024 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001805284/000180528425000010/rkt-20241231.htm).

[4] *See* Rocket Form 10-K for year ending December 31, 2024 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001805284/000180528425000010/rkt-20241231.htm)

[5] *See* Revolver at § 2.12 ("Fees") (requiring Rocket to "pay to … the account of each Lender a commitment fee, which shall accrue at the Applicable Rate on the average daily amount of the Unfunded Commitment of such Lender during the period from and including the Effective Date to but excluding the date on which such Commitment terminates. Commitment fees accrued through and including the last day of March, June, September and December of each year shall be payable in arrears on the fifteenth day following such last day of each of March, June, September and December and on the date on which the Commitments terminate, commencing on the first such date to occur after the date hereof. All commitment fees shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day)."); *id*. at § 1.01 ("Defined Terms") (for definitions of, *inter alia*, "Unfunded Commitment", "Commitment", and "Revolving Credit Exposure".).

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

9.      In order to enable Redfin stockholders to contextualize the potential conflict posed by Goldman Sachs' concurrent lending relationship with Rocket, the Proxy must disclose the nature of the relationship (i.e., the Revolver), the amount committed by Goldman Sachs to Rocket under the Revolver, and the total aggregate amount paid by Rocket to Goldman Sachs under the Revolver (including interest and fees) during the two years prior to March 9, 2025.

10.      *Second*, as detailed below, the Proxy fails to disclose key inputs to a discounted cash flow analysis ("DCF Analysis") prepared by Goldman Sachs in support of its Fairness Opinion. Because the DCF analysis supports the Fairness Opinion, the Board relied on the Fairness Opinion to justify its recommendation to Redfin stockholders to approve the Proposed Merger, and Goldman Sachs concededly has a potential conflict, the inputs used to prepare the DCF Analysis are material to Redfin stockholders.

11.      As noted, the Stockholder Vote is presently scheduled for June 4, 2025. In order to allow Redfin stockholders to cast fully informed votes with respect to the Proposed Merger, it is imperative that the Board cure the Disclosure Violations described above no later than five (5) days prior to the Stockholder Vote. Accordingly, Plaintiff respectfully asks the Court to enjoin the Special Meeting and the Stockholder Vote until the Board causes the filing of supplemental disclosures with the SEC at least five (5) days in advance of the Stockholder Vote curing the Disclosure Violations. Alternatively, if the Disclosure Violations are not cured, and the Proposed Merger is consummated, Plaintiff reserves the right to recover damages suffered by himself and similarly-situated investors as a result of such Disclosure Violations.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question

TOWNSEND LEGAL, PLLC
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

jurisdiction) because Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

13.    This Court has subject matter jurisdiction over Plaintiff's state claim pursuant to 28 U.S. Code § 1367 (supplemental jurisdiction).

14.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

15.    Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391 because Defendant Redfin's principal place of business is in this District, the other Defendants are found in and transact business in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District

## PARTIES

16.    Plaintiff Jason Morano (defined above as "Plaintiff") is, and has been at all relevant times, the owner of Redfin common stock.

17.    Redfin is a Delaware corporation with principal executive offices located at 1099 Stewart Street, Suite 600, Seattle, WA 98101.

18.    Rocket is a Michigan corporation with principal executive offices located at 1050

Woodward Ave., Detroit, MI 48226.

19.     Defendant David H. Lissy is, and was at all relevant times, the Chairman of the Board.

20.     Defendant Glenn Kelman is, and was at all relevant times, Redfin's Chief Executive Officer and a director of the Board.

21.     Defendant Robert Bass is, and was at all relevant times, a director of the Board.

22.     Defendant Julie Bornstein is, and was at all relevant times, a director of the Board.

23.     Defendant Kerry D. Chandler is, and was at all relevant times, a director of the Board.

24.     Defendant Austin Ligon is, and was at all relevant times, a director of the Board.

25.     Defendant Brad Singer is, and was at all relevant times, a director of the Board.

26.     Defendant James Slavet is, and was at all relevant times, a director of the Board.

27.     Defendant Selina Tobaccowala is, and was at all relevant times, a director of the Board.

28.     The Defendants identified in paragraphs 19 through 27 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     Background of Redfin, Rocket, and the Proposed Merger**

29.     Redfin is a residential real estate technology company that provides brokerage and mortgage origination services. Redfin common stock is listed on the Nasdaq under the symbol "RDFN".

30.     Rocket is a financial technology company with a platform of mortgage, real estate, and personal finance businesses, including Rocket Mortgage, Rocket Homes, Rocket Close,

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

Rocket Money and Rocket Loans. Rocket common stock is listed on the NYSE under the symbol "RKT".

31.    On March 10, 2025, Redfin and Rocket announced that they had entered into the Merger Agreement.[6]

32.    Pursuant to the Merger Agreement, Redfin shareholders will receive 0.7926 shares of Rocket Class A common stock for each share of Redfin common stock they own ("Exchange Ratio"). As the Proxy explains, the Exchange Ratio is fixed, and thus will not reflect changes in the market price of Redfin common stock or Rocket Class A common stock between the date of signing of the Merger Agreement and consummation of the Merger. For example, the Proxy notes that based on the range of closing prices of Rocket Class A common stock during the period from March 7, 2025, the last full trading day before the public announcement of the Merger, through April 30, 2025, the latest practicable trading date before the date of the Proxy, the Exchange Ratio resulted in an estimated implied value of the Merger Consideration ranging from a high of $12.50 to a low of $9.15 for each share of Redfin common stock. Accordingly, because Redfin face risk concerning the value that they will ultimately receive in connection with the Proposed Merger, it is imperative that they be able to cast fully informed votes with respect to the Proposed Merger.

33.    On May 5, 2025, to persuade Redfin stockholders to vote in favor of the Proposed Merger at the Special Meeting presently scheduled for June 4, 2025, Defendants authorized the filing of the materially false and misleading Proxy with the SEC.

34.    The Proxy contains the Fairness Opinion of Goldman Sachs opining that the Exchange Ratio is fair to Redfin stockholders.

---

[6]    *See*    https://investors.redfin.com/news-events/press-releases/detail/1288/rocket-companies-to-acquire-redfin-accelerating-purchase    (Redfin Merger announcement);    https://www.prnewswire.com/news-releases/rocket-companies-to-acquire-redfin-accelerating-purchase-mortgage-strategy-302396502.html    (Rocket Merger announcement)

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

**B.    The Materially Omissive and Misleading Language in the Proxy**

*Materially Misleading Omissions Concerning Conflicts*
*of Goldman Sachs*

35.    In connection with the description of the Fairness Opinion, the Proxy states the following with respect to Goldman Sachs at page 58:

> Goldman Sachs and its affiliates are engaged in advisory, underwriting, lending and financing, principal investing, sales and trading, research, investment management and other financial and non-financial activities and services for various persons and entities. . . . **Goldman Sachs Investment Banking has an existing lending relationship with Rocket and/or its subsidiaries.** Goldman Sachs acted as financial advisor to Redfin in connection with, and participated in certain of the negotiations leading to, the transaction contemplated by the Merger Agreement. During the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has not been engaged by Redfin or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. **During the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has not been engaged by Rocket or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation.** During the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has not been engaged by RHI or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. Goldman Sachs may in the future provide financial advisory and/or underwriting services to Redfin, Rocket, RHI and their respective affiliates and, as applicable, portfolio companies, for which Goldman Sachs Investment Banking may receive compensation.

Proxy at 58.

36.    The highlighted language above in the Proxy is rendered materially misleading by omission. Specifically, from the vague language above disclosing the "existing lending relationship" between Goldman Sachs and Rocket, there is a lack of clarity concerning the magnitude of Goldman's lending commitment to Rocket, and the extent to which and under what circumstances Goldman Sachs has received and continues to receive compensation from Rocket for lending services while simultaneously being compensated to serve as Redfin's financial advisor in negotiations against Rocket in connection with the Proposed Merger. To cure this materially

TOWNSEND LEGAL, PLLC
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

misleading omission, the Proxy must disclose the nature of the relationship (i.e., the Revolver), the amount committed by Goldman Sachs to Rocket under the Revolver, and the total aggregate amount paid by Rocket to Goldman Sachs under the Revolver (including interest and fees) during the two years prior to March 9, 2025. *See Kihm v. Mott*, 2021 WL 3883875, at *18 (Del. Ch. Aug. 31, 2021) (if a potential conflict exists, Delaware law requires "disclosure of the relationship itself and the amount of fees the advisor received."); *Chen v. Select Income REIT*, 2019 WL 6139014, at *2, 13 (S.D.N.Y. Oct. 11, 2019) (omission of compensation received by sell-side financial advisor from the buyer was material).

37.    In addition, Goldman Sachs holds 2.51% of Redfin's stock (3,208,427 shares) and 0.27% of Rocket's stock (404,009 shares) based on its last reporting as of December 31, 2024. However, the Proxy does not disclose this information or whether the Board knew about it before seeking and accepting Godman Sachs' Fairness Opinion.

### Materially Misleading Omissions Concerning the DCF Analysis and NOL Projections

38.    A financial advisor's fairness opinion is one of the most important process-based underpinnings of a board's recommendation of a transaction to its stockholders. Accordingly, descriptions of the valuation analyses underlying fairness opinions must disclose key inputs and assumptions. The failure to do so renders a description of the analysis materially misleading. *See Chen*, 2019 WL 6139014, at *2, 13 (omission of key inputs and assumptions from the summaries of UBS's valuation analyses, including Discounted Cash Flow Analyses, was material).

39.    Here, the Proxy fails to disclose key inputs to the DCF Analysis that Goldman Sachs prepared to support the Fairness Opinion. That nondisclosure renders the statement describing the DCF Analysis materially misleading.

40.    The Proxy describes the DCF Analysis as follows:

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

*Illustrative Discounted Cash Flow Analysis*. Using the Projections, Goldman Sachs performed an illustrative discounted cash flow analysis on Redfin to derive a range of illustrative present values per share of Redfin common stock. Using the mid-year convention for discounting cash flows and discount rates ranging from 13.0% to 18.0%, reflecting estimates of Redfin's weighted average cost of capital, Goldman Sachs discounted to present value as of December 31, 2024 (i) estimates of unlevered free cash flow for Redfin for the fiscal years 2025 through 2035 as reflected in the **Projections** and (ii) a range of illustrative terminal values for Redfin, which were calculated by applying perpetuity growth rates ranging from 4.0% to 5.0%, to a terminal year estimate of the unlevered free cash flow to be generated by Redfin, as reflected in the Projections (which analysis implied terminal year next twelve month ("NTM") earnings before interest, taxes, depreciation and amortization ("EBITDA") exit multiples ranging from 5.0x to 8.7x). The range of perpetuity growth rates was estimated by Goldman Sachs utilizing its professional judgment and experience, taking into account the Projections and market expectations regarding long-term real growth of gross domestic product and inflation. **Goldman Sachs derived such discount rates reflecting estimates of Redfin's weighted average cost of capital, by application of the Capital Asset Pricing Model ("CAPM"), which requires certain company-specific inputs, including Redfin's target capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a beta for Redfin, as well as certain financial metrics for the United States financial markets generally** . . . Goldman Sachs then added a range of implied present values per share of Redfin common stock of the **NOLs** of $0.50 to $0.61 (which Goldman Sachs derived using illustrative discount rates ranging from 13.0% to 18.0%, reflecting estimates of Redfin's weighted average cost of capital, **and the NOL Projections and the Projections**) to derive a range of illustrative present values per share of Redfin common stock ranging from $6.37 to $17.30.

Proxy at 56.

41.    The Proxy fails to adequately disclose the values for the highlighted inputs, such as the beta selected for Redfin, and the "certain financial metrics" selected and their values (e.g., whether such metrics include the risk-free rate, and market risk premium, and if so, their values). These inputs are material to shareholders because they were used to calculate the discount rate range used to value Redfin. If the discount rate range was artificially high as a result of these such inputs, it would have depressed the value ranges generated for Redfin's shares, resulting in an inaccurate and misleading DCF Analysis. *See In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76 (Del. Ch. 2007) (raising discount rates drives down the resulting value range).

42.     Moreover, the Proxy references that Goldman Sachs also reviewed  forecasts of both Redfin's performance from 2025 through 2035 ("Performance Projections") and net operating loss carryforwards (the "NOL Projections") and  incorporated *both* sets of projections  into the DCF Analysis. However, while the Proxy discloses the Performance Projections (at page 54), the NOL Projections are not disclosed anywhere in the Proxy. This omission creates the misleading impression that the NOL Projections are insufficiently material to require disclosure even though Goldman Sachs considered them material in preparing its Fairness Opinion by incorporating them alongside the Performance Projections into the DCF Analysis. Indeed, the NOLs contributed $0.50 to $0.61 per share in present value in the DCF Analysis, which represents nearly 10% at the low end of the present value generated by the DCF Analysis of $6.37 per share. *See S.E.C. v. Fuhlendorf*, No. C09-1292, 2011 WL 999221, at *7 (W.D. Wash. Mar. 17, 2011) (citing SEC's internal guidance on materiality in SAB No. 99, under which five percent is a threshold that may be used as an initial step in assessing materiality).

43.     Since Goldman Sachs used its DCF Analysis to support the Fairness Opinion, and since the Board—in turn—relied on the Fairness Opinion to justify its decision to authorize Redfin's entry into the Merger Agreement, the failure to fully and fairly disclose the inputs used by Goldman Sachs in its DCF Analysis, as well as the NOL Projections reviewed, are material omissions that render statements in the Proxy misleading.

*  *  *

44.     Based on the Disclosure Violations above, Plaintiff and the members of the Class will suffer irreparable harm by virtue of being unable to cast fully informed votes. *See Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. SACV 14-1214 DOC ANX, 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014) ("An uninformed shareholder vote is often considered an irreparable

harm, particularly because the *raison d'etre* of many of the securities laws is to ensure that shareholders make informed decisions."); *see also TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 448 (1976) (the purpose of Rule 14a-9 is to "ensure disclosures by corporate management in order to enable the shareholders to make an informed choice.").

45.     Accordingly, Plaintiff respectfully requests that the Court enjoin Defendants from holding the Stockholder Vote until five (5) days after Defendants file corrective disclosures with the SEC curing the Disclosure Violations above. *See Allergan*, 2014 WL 5604539, at *16 ("preventing an uninformed shareholder vote through corrective disclosures once the inadequate disclosure is discovered is preferable to sorting out post-vote remedies for uninformed shareholders."); *Vento v. Curry*, 2017 WL 1076725, at *4 (Del. Ch. Mar. 22, 2017) (enjoining vote until five days after filing of supplemental disclosures addressing material omissions).

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of himself and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class ("Class") consisting of all holders of Redfin common stock as of April 22, 2025, the record date to vote with respect to the Proposed Merger. Excluded from the Class are Defendants and any individual or entity affiliated with any Defendant.

47.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. As of the record date of April 22, 2025, there were approximately 128,031,179 shares of Redfin common stock outstanding and entitled to vote, held by thousands of shareholders scattered throughout the United States;

(b)      There are questions of law and fact that are common to the Class, and which predominate over questions affecting any individual Class member. The common questions include the following:

(i)    Whether Defendants violated Section 14(a)/Rule 14a-9 and/or breached their fiduciary duty of candor owed to Plaintiff and the Class; and

(ii)   Whether Plaintiff and the Class would suffer irreparable injury if the Proposed Merger is completed without corrective disclosures being issued;

(c)      Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class; and

(d)      Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

48.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class. Thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

## COUNT I
## Against All Defendants for Violations of Section 14(a) of the Exchange Act

50.     Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

51.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.     Defendants violated Section 14(a) and Rule 14a-9 promulgated thereunder by disseminating the materially false and misleading Proxy, which made false and misleading statements, and failed to disclose material facts necessary in order to make statements made therein, in light of the circumstances under which they were made, not misleading.

54.     By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, the Individual Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein not misleading.

TOWNSEND LEGAL, PLLC
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

55.     Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants omitted material facts from the Proxy necessary to make statements therein not misleading, in order to induce Redfin stockholders to vote for the Merger. Defendants were at least negligent in filing the Proxy with these materially misleading statements and omissions.

56.     The materially misleading statements and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Redfin stockholder would view disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to Redfin stockholders.

57.     The Proxy advises Redfin stockholders that "[y]our vote is very important, regardless of the number of shares you own," and that the "proposal to adopt the Merger Agreement must be approved by the affirmative vote of the holders of a majority of the outstanding shares of Redfin common stock entitled to vote on such matter." The Proxy soliciting the votes of Chase stockholders is thus an essential link in the accomplishment of the Merger, and transaction causation is established.

58.     Because of the materially misleading statements and omissions in the Proxy specified above, Plaintiff and other Redfin stockholders are threatened with irreparable harm insofar as Plaintiff and other Redfin stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger if such materially misleading statements and omissions are not corrected within five (5) days before the Stockholder Vote. Therefore, injunctive relief is appropriate.

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

59.     Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. They were thus directly involved in preparing this document.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

63.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict of an uninformed vote.

**COUNT III**

**Against the Individual Defendants for Breach of their Fiduciary Duties of Care/Candor and <u>Disclosure Under Delaware Law</u>**

64.    Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

65.    Under Delaware law, the Individual Defendants directly owed Plaintiff and all of the Company's shareholders fiduciary duties of loyalty and care, which encompasses good faith, candor and disclosure, and required them to disclose fully and fairly all material information within their control when they sought approval of the Proposed Merger by Redfin stockholders, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements that might prevent Redfin stockholders from casting fully informed votes with respect to the Proposed Merger.

66.    In breach of their fiduciary duties, the Individual Defendants approved and caused the Company to file the materially omissive and misleading Proxy with the Disclosure Violations detailed above.

67.    As a result of the Disclosure Violations, Plaintiff and the other members of the Class face a risk of irreparable harm on account of their inability to cast fully informed votes with respect to the Proposed Merger since if the Proposed Merger is approved based on the materially omissive and misleading Proxy, the Stockholder Vote cannot be redone.

68.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable power to enjoin the Stockholder Vote pending correction of the Disclosure

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

1
2

Violations alleged herein can Plaintiff and the Class be fully protected from the irreparable harm of being unable to cast fully informed votes with respect to the Proposed Merger.

3

### PRAYER FOR RELIEF

4
5

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against Defendants as follows:

6
7
8

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative;

9
10
11
12

B.      Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from holding the Shareholder Vote, unless and until the Company disseminates supplemental disclosures curing the above-described materially misleading statements and omissions in the Proxy;

13
14
15

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

16

D.      Granting such other and further relief as this Court may deem just and proper.

17

### JURY DEMAND

18

Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

19
20

DATED: May 9, 2025                                    Respectfully submitted,

21

**OF COUNSEL**                                        **TOWNSEND LEGAL CORP.**

22

**MONTEVERDE & ASSOCIATES PC**            */s/ Roger M. Townsend*

23

Juan E. Monteverde                                    Roger M. Townsend
Jonathan T. Lerner                                    380 Winslow Way, Suite 200

24

The Empire State Building                             Bainbridge Island, WA 98110
350 Fifth Avenue, Suite 4740                          Tel: 206-761-2480

25

New York, NY 10118                                    Roger@townsendlegal.com
Tel: (212) 971-1341

26

jmonteverde@monteverdelaw.com                         *Counsel for Plaintiff*
jlerner@monteverdelaw.com

27

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
jfruchter@wohlfruchter.com

*Counsel for Plaintiff*

TOWNSEND LEGAL, PLLC
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480