UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON MORANO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>REDFIN CORPORATION ET AL.,<br><br>　　　　　Defendants. | CASE NO. 2:25-cv-00883-JHC<br><br>ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED DISCOVERY |

# I
## INTRODUCTION

This matter comes before the Court on Plaintiff's Ex Parte Motion to Expedite Briefing and Notation Date for Expedited Discovery Ahead of June 4 Vote. Dkt. # 3. Plaintiff Jason Morano asks the Court to grant expedited discovery to support his motion for a preliminary injunction in which he asks the Court to enjoin a June 4, 2025 vote by Defendant Redfin Corporation's shareholders to approve a merger. Dkt. # 23. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, the Court DENIES the motion.

## II
## BACKGROUND

Redfin is a technology company that provides residential real estate brokerage and mortgage origination services. Dkt. # 1 at 7, ¶ 29. In late 2024, Redfin's Board of Directors and management began discussing strategic alternatives. Dkt. # 17-1 (Proxy) at 6–7. Various parties inquired into acquiring Redfin, including Defendant Rocket Companies, Inc., a financial technology company and mortgage lender. *Id.*; Dkt. # 1 at 7–8, ¶ 30. On December 12, 2024, Redfin's Board established a committee of three independent directors (i.e., without conflicting relationships with the parties interested in a transaction with Redfin) to oversee the Board's consideration of strategic alternatives. Proxy at 7. The independent committee engaged in due diligence of potential transactions with the aid of Goldman Sachs as a financial advisor. *Id.* at 8.

On March 9, 2025, Redfin and Rocket executed a Merger Agreement. *Id.* at 16. Defendants say that under the Merger, Rocket would acquire Redfin's outstanding shares for a premium of about 63% over the volume weighted average price of Redfin's common stock over the 30 trading days before announcement of the Merger. Dkt. # 16 at 6; *see also* Proxy at 16. Morano contends that the premium has decreased by at least 16% since the Merger was announced. Dkt. # 29 at 12. On May 5, 2025, Redfin filed its definitive proxy statement about the Merger. Dkt. # 1 at 8, ¶ 33. Redfin's shareholders will vote to approve the Merger on June 4, 2025. Proxy at 16.

On May 9, 2025, Morano filed a class action complaint against Defendants alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and breach of fiduciary duty claims under Delaware law. Dkt. # 1. Morano then moved for a preliminary injunction to enjoin the June 4, 2025 shareholder vote, Dkt. # 23, and for expedited discovery to support his preliminary injunction motion, Dkt. # 3.

MOTION FOR EXPEDITED DISCOVERY - 2

In his expedited discovery motion, Morano claims that Redfin's proxy is misleading for two reasons. First, Morano contends that the proxy does not accurately reflect the extent of a possible conflict that Goldman Sachs might have in acting as Redfin's financial advisor. He says that on July 2, 2024, Rocket entered into a Revolving Credit Agreement (the Revolver) that provided it with access to a $1.15 billion revolving credit facility funded in part by Goldman Sachs. Dkt. # 3 at 2–3 (citing SEC filings). Although Rocket would normally pay interest to Goldman Sachs based on outstanding balances under the Revolver, Rocket has not had an outstanding balance as of December 31, 2024. *Id.* at 3. But the Revolver nonetheless requires Rocket to pay commitment fees to Goldman Sachs. *Id.*

Morano takes issue with the proxy's statements that "Goldman Sachs Investment Banking has an existing lending relationship with Rocket and/or its subsidiaries," and that "[d]uring the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has *not* been engaged by Rocket or its affiliates to provide financial advisory or underwriting services *for which Goldman Sachs has recognized compensation*." Dkt. # 4 at 76 (emphasis added). He says that based on this language, "it is unclear the extent to which Goldman Sachs has received and continues to receive compensation from Rocket for lending services while simultaneously serving as Redfin's financial advisor in negotiations against Rocket in connection with the Proposed Merger." Dkt. # 3 at 2.

Second, Morano asserts that the proxy does not disclose inputs such as net operating loss carryforwards (NOL Projections) that Goldman Sachs used in preparing a discounted cash flow (DCF) analysis in support of its Fairness Opinion. *Id.* at 3. In support of both of his claims, Morano seeks expedited discovery of the following:

- Documents related to any and all sums (including fees and interest) that Rocket has paid to Goldman Sachs since March 9, 2023, for lending services or any other services not already referenced in the Proxy.

ORDER DENYING PLAINTIFF'S EX PARTE
MOTION FOR EXPEDITED DISCOVERY - 3

- The Presentation or banker book for the fairness opinion from Goldman Sachs, including the DCF Analysis.

- The NOL Projections

*Id.* at 4–5.

## III
### DISCUSSION

The Private Securities Litigation Reform Act (PSLRA) "was enacted in 1995 in response to several perceived abuses in securities litigation, including discovery abuses." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014) (quotation marks and citation omitted). In pertinent part, the PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B). Although the provision states, "the pendency of any motion to dismiss," the discovery stay applies automatically "from the initial filing of the case" until "the court has sustained the legal sufficiency of the complaint." *Eisner v. Meta Platforms, Inc.*, 2024 WL 2749433, at *3 (N.D. Cal. May 28, 2024) (quoting *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 912–13 (9th Cir. 1999)). Because the Court has not yet tested the legal sufficiency of Morano's complaint, he may only seek particularized discovery that is necessary to preserve evidence or prevent undue prejudice.

Even if the discovery that Morano seeks is "particularized," he does not show that it is necessary to preserve evidence or to prevent undue prejudice. He makes no argument that without expedited discovery, he will lose access to the documents that he seeks. And "undue prejudice" means "improper or unfair detriment" that is "something less than 'irreparable harm.'" *Med. Imaging Centers of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal.

1996). This standard "appropriately attempts to balance the competing concerns of maintaining truth and integrity in the marketplace while curbing meritless litigation." *Id.* at 721. Although Morano cites cases in which expedited discovery has been granted under this standard, he does not explain how expedited discovery is necessary to prevent undue prejudice here.

Morano suggests that the undue prejudice he will suffer is that, as a shareholder, he will not be able to make an informed vote on the Merger. *See* Dkt. # 3 at 6 (citing *Ryan v. Walton*, 2010 U.S. Dist. LEXIS 108618, at *7 (D.D.C. Mar. 9, 2010)). But he does not explain why expedited discovery is necessary to prevent such harm. His claims appear to be based on Defendants' failure to disclose material information about Goldman Sachs's relationship with Rocket and Goldman Sachs's DCF Analysis. *See e.g.*, Dkt. # 1 at 9–10, 12 ¶¶ 36, 43. He does not explain why he needs access to the exact amounts "committed by Goldman Sachs to Rocket under the Revolver," "the total aggregate amount paid by Rocket to Goldman Sachs under the Revolver," and specific numbers pertaining to Goldman Sachs's DCF analysis to sufficiently raise these claims in his motion for a preliminary injunction to enjoin the June 4, 2025 shareholder vote.[1] Dkt. # 3 at 3. To the contrary, he says that his preliminary injunction motion as filed "demonstrates a likelihood of success on the merits." Dkt. # 29 at 8. He only vaguely says that expedited discovery will create a fuller record upon which the Court can adjudicate his preliminary injunction motion. *See id.* at 10.

---

[1] Morano cites *Nichting v. DPL Inc.*, 2011 WL 2892945, at *4 (S.D. Ohio July 15, 2011), in which the court granted in part the plaintiff's motion for expedited discovery as to certain financial projections because failure to disclose "unlevered free cash flows, or even the key inputs necessary to reach free cash flows" would undermine a shareholder's ability to make an informed vote on a merger. But that decision appears to conflate showing irreparable harm for purposes of a preliminary injunction with showing that undue prejudice (similarly defined as something less than irreparable harm) warrants lifting the PSLRA's stay on discovery. *See id.* at *4 & n.17 (citing cases involving temporary restraining orders and preliminary injunctions). Although showing irreparable harm for purposes of a preliminary injunction can show that a plaintiff could suffer undue prejudice, the PSLRA requires the plaintiff to show that "discovery is *necessary* . . . to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).

ORDER DENYING PLAINTIFF'S EX PARTE
MOTION FOR EXPEDITED DISCOVERY - 5

To be sure, it could be that knowing these exact values could help the Court assess the extent of Goldman Sachs's relationship with Rocket or the significance of the omitted inputs pertaining to Goldman Sachs's DCF analysis. But Morano does not carry his burden of showing that without these numbers, he will suffer undue prejudice by being disadvantaged in moving to enjoin the June 4, 2025 shareholder vote. *Takiguchi v. MRI Int'l, Inc.*, 2013 WL 6528507, at *8–9 (D. Nev. Dec. 11, 2013) (it is the plaintiff's burden to show undue prejudice). And merely being "informationally disadvantaged if discovery is not allowed" is not, without more, sufficient grounds to show undue prejudice. *Eisner*, 2024 WL 2749433, at *5.

Thus, the Court does not lift the PLSRA's stay on discovery.[2]

## IV
## CONCLUSION

For these reasons, the Court DENIES Morano's ex parte motion for expedited discovery.

Dated this 20th day of May, 2025.

John H. Chun
United States District Judge

---

[2] Because the Court concludes that the PSLRA's stay on discovery applies, it does not reach the issue whether Morano's ex parte motion for expedited discovery—to which Defendants responded—was procedurally proper.