UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON MORANO,<br><br>Plaintiff,<br><br>v.<br><br>REDFIN CORPORATION ET AL.,<br><br>Defendants. | CASE NO. 2:25-cv-00883-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction. Dkt. # 23. Plaintiff Jason Morano asks the Court to enjoin the pending shareholder vote on the merger of Defendants Redfin Corporation and Rocket Companies, Inc. *Id.* at 6. Plaintiff argues this is necessary because the proxy statement Redfin issued to shareholders encouraging them to approve the merger omits material information and an uninformed shareholder vote will cause irreparable harm. *Id.* The Court has reviewed the materials filed in support of and in opposition to the motion, the record (including the supplemental disclosures and attendant briefing), and the governing law. Being fully advised, for the reasons below, the Court DENIES the motion.

ORDER - 1

## II

## BACKGROUND

Redfin is a technology company that provides residential real estate brokerage and mortgage origination services. Dkt. # 1 at 7, ¶ 29. In late 2024, Redfin's Board of Directors and management began discussing strategic alternatives. Dkt. # 17-1 (Proxy) at 6–7. Various parties inquired into acquiring Redfin, including Defendant Rocket Companies, Inc., a financial technology company and mortgage lender. *Id.*; Dkt. # 1 at 7–8, ¶ 30. On December 12, 2024, Redfin's Board established a committee of three independent directors (i.e., individuals without conflicting relationships with the parties interested in a transaction with Redfin) to oversee the Board's consideration of strategic alternatives. Proxy at 7. The independent committee engaged in due diligence of potential transactions with the aid of Goldman Sachs as a financial advisor. *Id.* at 8.

On March 9, 2025, Redfin and Rocket executed a Merger Agreement. *Id.* at 16. Defendants say that under the Merger, Rocket would acquire Redfin's outstanding shares for a premium of about 63% over the volume weighted average price of Redfin's common stock over the 30 trading days before announcement of the Merger. Proxy at 16. Plaintiff contends that the premium has decreased by at least 16% since the Merger was announced. Dkt. # 29 at 12. On May 5, 2025, Redfin filed its definitive proxy statement about the Merger. Dkt. # 1 at 8, ¶ 33. Redfin's shareholders are scheduled to vote on whether to approve the Merger on June 4, 2025. Proxy at 16.

On May 9, 2025, Plaintiff filed a class action complaint against Defendants alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and breach of fiduciary duty claims under Delaware law. Dkt. # 1. Plaintiff then moved for a preliminary injunction to enjoin the June 4, 2025 shareholder vote. Dkt. # 23.

ORDER - 2

Plaintiff claims that Redfin's proxy is misleading for two reasons. First, he contends that the proxy does not accurately reflect the extent of a possible conflict that Goldman Sachs might have in acting as Redfin's financial advisor. He says that on July 2, 2024, Rocket entered into a Revolving Credit Agreement (the 2024 Revolver) that provided it with access to a $1.15 billion revolving credit facility funded in part by Goldman Sachs. Dkt. # 23 at 7–8. Although Rocket would normally pay interest to Goldman Sachs based on outstanding balances under the Revolver, Rocket has never borrowed funds under the 2024 Revolver. Dkt. # 41 at 3. But the 2024 Revolver nonetheless requires Rocket to pay commitment fees to Goldman Sachs. Dkt. # 23 at 7–8.

Plaintiff challenges the proxy's statements that "Goldman Sachs Investment Banking has an existing lending relationship with Rocket and/or its subsidiaries," and that "[d]uring the two-year period ended March 9, 2025, Goldman Sachs Investment Banking has *not* been engaged by Rocket or its affiliates to provide financial advisory or underwriting services *for which Goldman Sachs has recognized compensation*." Dkt. # 23 at 11 (emphasis added). He says that this language is "misleadingly clear and incomplete" because the proxy does not disclose the sums that Rocket has paid to Goldman Sachs under the Revolvers or the magnitude of Goldman Sachs's present lending commitment to Rocket. *Id.* at 12. According to Plaintiff, these omissions are even more troubling because the proxy concedes the importance of the amounts Rocket has paid to Goldman Sachs by addressing that subject and because the proxy provides far more detailed information about Capped Call Transactions between Redfin and Goldman Sachs. *Id.*

Second, Plaintiff asserts that the proxy does not disclose inputs such as net operating loss carryforwards (NOL Projections) that Goldman Sachs used in preparing a discounted cash flow (DCF) analysis in support of its Fairness Opinion. *Id.* at 12–13.

ORDER - 3

On May 30, 2025, after the instant motion for preliminary injunction was filed, Redfin filed supplemental disclosures to the proxy statement with the United States Securities and Exchange Commission (SEC).[1] Dkt. # 47 at 2. The supplemental disclosures provide the NOL Projections used in preparing the Fairness Opinion, and moot Plaintiff's disclosure claim about the NOL Projections. *Id.* at 5–6  They also inform shareholders that the fees Rocket paid to Goldman Sachs under the 2024 Revolver were "substantially less than Goldman Sachs' compensation in connection with the Merger[.]" *Id.* at 6. Plaintiff is satisfied that this disclosure has alerted Redfin shareholder to the existence of these fees and their magnitude. *Id.* at 3. Yet Plaintiff still maintains that the proxy statement is misleading because it "fails to inform Redfin stockholders about the size of Goldman's present and anticipated lending commitment to Rocket." *Id.*

### III

### DISCUSSION

A.  Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). To obtain a preliminary injunction, the plaintiff must show (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of" a preliminary injunction"; (3) "the balance of equities tips in [their] favor"; and (4) a preliminary injunction "is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are called the *Winter* factors).  The Ninth Circuit has added that "if a plaintiff can only show that there are 'serious questions going to the

---

[1] The Court takes judicial notice of this filing because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

        1.      Likelihood of Success on Merits

            a.      Section 14(a) Claim

Section 14(a) of the Securities Exchange Act of 1934 and SEC rule 14a–9 "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading."[2] *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Said differently, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available. *Id.* "The 'total mix' of information normally includes

---

[2] Section 14(a) provides in pertinent part:
> It shall be unlawful . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a). Rule 14a-9 provides in pertinent part:
> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 CFR § 240.14a-9.

ORDER - 5

information that is and has been in the readily available general public domain and facts known or reasonably available to the shareholders." *In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005) (quoting *Kapps v. Torch Offshore, Inc.,* 379 F.3d 207, 216 (5th Cir. 2004)); *see Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004) ("It is important to note that a 'reasonable investor' is neither an ostrich, hiding her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing.").

After Defendants issued supplemental disclosures to the proxy statement, Plaintiff maintains the proxy is still misleading because it "fails to inform Redfin stockholders about the size of Goldman's present and anticipated lending commitment to Rocket." Dkt. # 46 at 3. And, according to Plaintiff, this is a material omission because shareholders need this information "to evaluate the magnitude of Goldman Sachs' potential conflict, and weigh for themselves the credibility of Goldman Sachs' fairness opinion in light of that conflict." Dkt. # 23 at 17.

The Court cannot agree that the size of Goldman Sachs's present and anticipated lending commitment to Rocket is a material omission based on the "total mix" of information that is already available to investors. The supplemental disclosures to the proxy statement are publicly available and say Goldman Sachs and Rocket have an existing lending relationship under "a revolving credit facility that has remained undrawn since March 9, 2023 (with respect to which Goldman Sachs and its affiliates have received commitment and upfront fees substantially less than Goldman Sachs' compensation in connection with the Merger)." Dkt. # 47 at 6. The supplemental disclosures also inform investors that they should consider additional information in "each company's filings with the SEC, including each company's most recent Annual Report on Form 10-K, as it may be updated from time to time by quarterly reports on Form 10-Q and current reports on Form 8-K, all of which are available at the SEC's website http://www.sec.gov." *Id*. at 7. Rocket's publicly available Form 10-K for the fiscal year ended

December 31, 2024, includes the 2024 Revolver between Rocket, Goldman Sachs, and ten other lenders with a total commitment of $1.15 billion dollars.[3] Rocket's Form 10-Q for the quarterly period ended March 31, 2025 is likewise publicly available.[4] Exhibit 10.6 of this document states that Rocket terminated its 2024 Revolver on April 30, 2025 and will enter a new revolving credit agreement upon completion of the pending merger between Rocket and Mr. Cooper Group, Inc. (the 2025 Revolver). *Id.* This document also discloses that the new revolving credit agreement has a total commitment of up to $2.25 billion dollars and is between Rocket, Goldman Sachs, and 18 other lenders. *Id.*

In addition, the supplemental disclosures to the proxy statement alert shareholders to this litigation. Dkt. # 47 at 5 ("On May 9, 2025, an additional case was filed by a purported individual stockholder of Redfin on behalf of himself and others similarly situated in the United States District Court for the Western District of Washington, captioned *Morano v. Redfin*, No. 25-cv-883 ("*Morano*"))." The docket and all current filings in this case are available to the public. So the declaration of Pete Mareskas in Support of Rocket Companies Inc.'s Opposition, much like Rocket's filings with the SEC, is readily available and within the public domain; it was also filed on the docket before the supplemental disclosures were issued. Dkt. # 41. Although Goldman Sachs's specific commitment under the 2024 and 2025 Revolvers is redacted in the SEC filings, the Mareskas declaration says, "Goldman's commitment to the 2024 revolver was less than 15% of the total aggregate commitment." *Id.* at 3. The declaration adds that "Goldman's commitment under the initial commitment of the 2025 revolver is identical to the

---

[3] Rocket Companies, Inc., 2024 Form 10-K, filed with the SEC on March 3, 2025, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001805284/000180528425000010/rkt-20241231.htm (Exhibit 10.22 shows the 2024 Revolver).
[4] Rocket Companies, Inc., 2024 Form 10-Q, filed with the SEC on May 9, 2025, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001805284/000180528425000065/rkt-20250331.htm.

ORDER - 7

2024 revolver." *Id.* at 4. Links to the 2024 and 2025 Revolvers and the total commitment under these credit facilities are also provided in the declaration. *Id.* at 2–4.

All in all, the "total mix" of information available to investors explains that Rocket and Goldman Sachs were involved in a revolving credit facility with a total commitment of $1.15 billion dollars when Goldman Sachs prepared the Fairness Opinion. *See* Dkt. # 4 at 263 (Fairness Opinion was issued on March 9, 2025). Rocket has also informed investors that it intends to enter a revolving credit facility with Goldman Sachs that has a total commitment of $2.25 billion dollars. The fact that Goldman Sachs's commitment to the 2024 Revolver and initial commitment to the 2025 Revolver is less than 15% of the total commitment is likewise within the public domain. Redfin shareholders can use this information to evaluate the magnitude of any potential conflict between Goldman Sachs and Redfin, and Redfin shareholders can decide for themselves whether this potential conflict influenced the credibility of the Fairness Opinion. *See* Dkt. # 23 at 17.

Accordingly, disclosure of "the size of Goldman's present and anticipated lending commitment to Rocket" would not alter the "total mix" of information available to the reasonable investor because this information is already publicly available. Dkt. # 46 at 3. Plaintiff even acknowledges the public availability of this information in his briefing. Dkt. # 52 at 2 ("[I]t remains possible to provide adequate disclosure to Redfin stockholders concerning the size of Goldman's present and anticipated lending commitment to Rocket using information already publicly disclosed in the Marekas Declaration[.]"). Thus, the omission of this information is not material. This conclusion is bolstered because Plaintiff concedes that the disclosure of nearly identical information "would moot Plaintiff's disclosure claim with respect to the size of Goldman's present and anticipated lending commitment to Rocket." *Id.* Plaintiff does not show a likelihood of success on the merits of his Section 14(a) claim because he does

ORDER - 8

not identify a material omission. *See also Sanchez v. IXYS Corp.*, 2018 WL 4787070, at *3 (N.D. Cal. Oct. 2, 2018) ("Publicly available information cannot be a material omission under federal securities laws.") (collecting cases).

      b.      Section 20(a) Claim

Liability under Section 20(a) of the Securities Exchange Act of 1934 is "obviously derivative of liability" under some other provision of the statute.[5] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253 n.2 (2010). The only other provision of the Exchange Act that Plaintiff brings a claim under is Section 14(a), and Plaintiff does not show a likelihood of success on his Section 14(a) claim. Section III.1.a, *supra*; *see* Dkt. # 1 at 15–19. Thus, Plaintiff does not show a likelihood of success on the merits of his Section 20(a) claim.

      c.      Delaware State Law Claim[6]

Under Delaware law, "in order for a plaintiff to state properly a claim for breach of a disclosure duty by omission, he must 'plead facts identifying (1) material, (2) reasonably available (3) information that (4) was omitted from the proxy materials.'" *Orman v. Cullman*, 794 A.2d 5, 31 (Del. Ch. 2002) (quoting *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 926 (Del. Ch. 1999)). And "for purposes of Delaware law, a material omission is by definition

---

[5] Section 20(a) provides in pertinent part:
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. § 78t(a).

[6] To the extent Defendants argue Plaintiff does not show a likelihood of success on this claim because it was brought in the wrong forum, Defendants are mistaken. *Lee v. Fisher*, 70 F.4th 1129, 1139 n.5 (9th Cir. 2023) (plaintiffs can seek enforcement in federal court of "the substantive obligation to refrain from making false or misleading statements in a proxy statement under Delaware law.").

an omission that alters the total mix of information available." *In re Columbia Pipeline Grp., Inc.*, 2021 WL 772562, at *36 (Del. Ch. Mar. 1, 2021).

Plaintiff's claim under Delaware law fails for the same reason his Section 14(a) claim fails. The size of Goldman Sachs's current and anticipated lending commitment to Rocket is publicly available information so the disclosure of this information would not change the "total mix" of information available to investors. Thus, this is not a material omission under Delaware law and Plaintiff does not show a likelihood of success on this claim.

2.   Other *Winter* Factors

Likelihood of success on the merits "is a threshold inquiry" and "is the most important" *Winter* factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). If there are no "serious questions going to the merits," *All. for the Wild Rockies*, 632 F.3d at 1134–35, the court need not consider the other *Winter* factors, *see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

Plaintiff does not raise serious questions going to the merits of any of his claims, so the Court need not consider the other *Winter* factors. Even if the Court did consider these factors, Plaintiff's arguments are premised on an uninformed shareholder vote taking place. Dkt. # 23 at 20–22. But Plaintiff does not show an uninformed shareholder vote will occur in the absence of a preliminary injunction. *See* Section III.1, *supra*. Thus, these other factors do not weigh in Plaintiff's favor and the Court will not issue the requested injunction.[7]

---

[7] The balance of hardships also tips strongly in Defendants' favor. If the injunction were to be granted, Redfin shareholders could receive substantially less for their shares than they can currently expect to receive—or no premium at all. Dkt. # 17-1 at 16 (Redfin shareholders stand to receive "a premium of approximately 63% over the volume weighted average price of Redfin common stock for the 30 trading days ending March 7, 2025, the last trading day prior to the announcement of the Merger Agreement."). A delay of the vote would also "impose other significant logistical problems and expenses upon Redfin and its employees." Dkt. # 39 at 2. And "Redfin runs the risk of losing valuable employees if the proposed merger is delayed." *Id.* The extent of Plaintiff's claimed potential hardship is an

## IV

## CONCLUSION

For these reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction. Dkt. # 23.

Dated this 3rd day of June, 2025.

*[signature: John H. Chun]*

John H. Chun
United States District Judge

---

uninformed shareholder vote. Dkt. # 43 at 13–14. But Plaintiff does not show an uninformed shareholder vote will take place in the absence of an injunction. Section III.1, *supra.*

ORDER - 11