UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON MORANO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>REDFIN CORPORATION et al.,<br><br>　　　　Defendants. | CASE NO. 2:25-cv-00883-JHC<br><br>ORDER |

# I

### INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Attorney Fees. Dkt. # 55. Plaintiff Jason Morano asks the Court to award his counsel $450,000 in attorney fees and expenses. *Id.* He says this award is warranted because his litigation efforts secured Supplemental Disclosures to the Proxy statement and the release of other purportedly material information before the pending shareholder vote on the merger of Defendants Redfin Corporation and Rocket Companies, Inc. *Id.* But Defendants say that Plaintiff does not meet the requirements for an award of attorney fees and expenses. Dkt. # 59. The Court has reviewed the

ORDER - 1

materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, for the reasons below, the Court DENIES the motion.

## II

### BACKGROUND

The Court already described the factual and procedural background of this litigation in its Order denying Plaintiff's Motion for Preliminary Injunction. *See* Dkt. # 53 at 2–4.

The day after the Court denied Plaintiff's motion for a preliminary injunction, Redfin shareholders voted on the pending merger with Rocket. *See* Redfin Corporation, Current Report (Form 8-K/A) (June 4, 2025), available at https://tinyurl.com/3f5pcts3.[1] Of the shares that voted, about 98.85% were cast in favor of the merger. *Id.*

Plaintiff now seeks attorney fees and expenses for the additional information disclosed by Defendants in connection with this litigation. Dkt. ## 55, 60. Defendants oppose this award. Dkt. # 59.

## III

### DISCUSSION

A.   Attorney Fees and Expenses

Plaintiff moves for attorney fees and expenses under both federal and Delaware law. Dkt. # 55 at 9, 11. To recover fees and expenses under the federal substantial benefit doctrine, a plaintiff must (1) "confer[] a substantial benefit upon a class represented by the defendant"; and (2) "demonstrate that his complaint was 'meritorious.'" *Lewis v. Anderson*, 692 F.2d 1267, 1270–71 (9th Cir. 1982) (citing *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970)). A

---

[1] The Court takes judicial notice of this filing because it contains information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).

ORDER - 2

plaintiff's claim confers a substantial benefit when "important shareholder rights are successfully asserted[.]" *Id.* at 1271.  To demonstrate his complaint was meritorious, Plaintiff's allegations must have "sufficient merit to survive a motion to dismiss on the pleadings." *Id.*  To survive a motion to dismiss, a Section 14 (a) claim must establish "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2023 WL 11996105, at *9 (N.D. Cal. Mar. 10, 2023) (quoting *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012)).

Under Delaware law, a plaintiff can recover attorney fees and expenses when his efforts produce "a corporate benefit." *Allen v. Harvey*, 2023 WL 7122641, at *3 (Del. Ch. Oct. 30, 2023).  To be awarded fees, the plaintiff must first demonstrate "(1) the suit was meritorious when filed, (2) the defendants took an action that produced a corporate benefit before the plaintiffs obtained a judicial resolution, and (3) the suit and the corporate benefit were causally related." *Id.*  Much like federal law, a claim is "meritorious" when "it can withstand a motion to dismiss on the pleadings." *Id.* at 4.  Delaware law requires directors "to provide shareholders with all information that is material to the action being requested and 'to provide a balanced, truthful account of all matters disclosed in the communications with shareholders.'" *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999) (quoting *Malone v. Brincat,* Del. Supr., 722 A.2d 5, 12 (1998)).

    1.    Application of the Federal Substantial Benefits Doctrine

The parties first dispute whether the federal substantial benefits doctrine applies.  This doctrine applies only when fees are imposed on a class that received a substantial benefit, and the

ORDER - 3

class would have otherwise needed to pay attorneys to bring the suit that generated the benefit. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396–97 (1970). Defendants say the substantial benefit doctrine does not apply because Redfin stockholders will not pay for the purported benefit that Plaintiff obtained for them. Dkt. # 59 at 9–10. Instead, they say, Rocket—a successor entity—will be forced to bear these costs. *Id.* But Plaintiff contends that Redfin still exists and Rocket, now Redfin's parent entity, should pay the fees. Dkt. # 60 at 6. Also, he notes that under Section 4.4 of the Merger Agreement, Rocket assumed responsibility for the material disclosed in the proxy statement. *Id.* And he says that Rocket assumed all of Redfin's "debts, liabilities, and duties" once the merger was effective. *Id.* (quoting 8 Del. C. § 259(a)).

      The terms of the Merger Agreement illustrate that the substantial benefit doctrine applies here. Section 1.2 of the Merger Agreement provides, "The Merger shall have the effects set forth in this Agreement and in the applicable provisions of the DGCL [(Delaware General Corporation Law)]." Dkt. # 4 at 186. The DGCL provides that once a merger is effective, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." 8 Del. C. § 259(a). The Merger Agreement also provides Redfin shareholders with 0.7926 shares of Rocket Class A common stock for each share of Redfin common stock that they currently own. Dkt. # 4 at 186–87. So Rocket agreed to take on all "debts, liabilities, and duties" incurred by Redfin, and Redfin shareholders automatically became Rocket shareholders in the merger. Thus, to the extent that attorney fees and expenses are assessed against Rocket, those fees were agreed to and will be assessed against the class that derived a benefit from the lawsuit.

      The caselaw that Defendants rely on does not undermine this conclusion. *See* Dkt. # 59 at 10. In *Paprakis v. Skullcandy, Inc.*, 2017 WL 2579027 (D. Utah June 14, 2017), the defendant

ORDER - 4

was purchased by Mill Road Capital (Mill Road). *Id.* at *1. Skullcandy shareholders received cash per share of their outstanding stock in this deal. *Id.* at *2. So the plaintiffs could not recover attorney fees under the substantial benefit doctrine because all of the Skullcandy shareholders were cashed out in the transaction, and Mill Road—not the class of former shareholders—owned Skullcandy once the deal was complete. *Id.* *Stevens v. Sembcorp Utilities Pte Ltd.*, 2011 WL 3296063 (S.D.N.Y. Aug. 1, 2011), similarly involved a cash transaction. *Id.* at *2. Much like the shareholders in *Paprakis*, the shareholders in *Stevens* "received cash for their shares from Sembcorp and . . . left the scene." *Id.* But here, former Redfin shareholders received Rocket shares in connection with the Merger Agreement. Dkt. # 4 at 186–87. This ensures that an attorney fee award collected from Rocket would be spread among members of the purportedly benefitted class.

       2.       Material Omission

Federal securities law "requires disclosure of information necessary to ensure that statements already made are clear and complete." *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 258 (2024). But there is no "affirmative duty to disclose any and all material information"; instead, disclosure is required "only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* at 264 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)).

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* But this test does not

ORDER - 5

"require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote." *Id.* Also, the materiality test is the same under both federal and Delaware law. *Morrison v. Berry*, 191 A.3d 268, 283 n.63 (Del. 2018) ("We have reaffirmed the *TSC* standard for materiality, consistent with the definition of materiality under the federal securities laws, 'in a long line of cases[.]'").

Plaintiff contends that the omitted disclosures were material because Defendants "failed to convey any quantifiable information whatsoever concerning the magnitude of the relationship" between Goldman Sachs and Rocket. Dkt. # 55 at 10. Plaintiff also says that the omission of the NOL Projections in the Proxy was material because they "constituted nearly 10% of the low end of the present value generated by the DCF Analysis of $6.37 per share." *Id.* at 12. So, according to Plaintiff, the omission of this quantifiable information altered the "total mix" of information available to shareholders. *Id.* at 6–7; Dkt. # 60 at 7.

Defendants respond that the disclosures about Goldman Sachs's revolving credit line were immaterial because the disclosed fees were small. Dkt. # 59 at 12. Since the fees were small, they say, they could not have plausibly corrupted Goldman Sachs's incentives as a financial advisor. *Id.* at 12–13. According to Defendants, the NOL Projections provided in the Supplemental Disclosures were likewise immaterial because the Proxy already disclosed the valuation analyses performed by Goldman Sachs, and the Proxy detailed the assumptions, methodology, and conclusion of each of these analyses. *Id.* at 13. Defendants also say that the Proxy further explained "*exactly* how much the present value of Redfin NOLs contributed to the resulting range of present values of Redfin stock in Goldman Sachs'[s] DCF analysis." *Id.* And Defendants show that Redfin's total NOLs are available in the company's quarterly filing—the Supplemental Disclosures simply provided estimates of specific timing when these NOLs would lead to tax savings. *Id.*

Plaintiff repeatedly argues that the failure to disclose quantifiable information in a proxy statement is necessarily a material omission, but this argument misses the mark. Dkt. # 55 at 6, 10, 12; *see* Dkt. # 60 at 7 (purporting to cite cases that hold "omitting quantifiable information is materially misleading under federal and Delaware law"). The caselaw that Plaintiff relies on instead reinforces the customary rule that omitted statements must be evaluated "in the light of the circumstances under which they were made[.]" *Macquarie*, 601 U.S. at 264.

For example, in *Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*—a case that Plaintiff repeatedly cites—after an audit in 2017, Amgen received notice from the IRS that it owed $3.6 billion in back taxes, plus interest, for the 2010–12 tax years. 751 F. Supp. 3d 330, 336 (S.D.N.Y. 2024); *see* Dkt. ## 55 at 10; 60 at 7. In its quarterly and annual SEC reports, Amgen disclosed that "[f]inal resolution of the IRS audit could have a material impact on [the company's] results of operations and cash flows if not resolved favorably." *Id.* at 338. In 2018, the IRS conducted another audit and informed Amgen that it owed around $5.1 billion in additional back taxes, plus interest, and around $2 billion in penalties for its 2013–15 tax years. *Id.* So in total, the IRS sought $10.7 billion in back taxes and penalties for the 2010–15 tax years. *Id.* Yet in its SEC filings and on investor calls, Amgen only disclosed that it faced "substantial" and "significant" tax adjustments, and that these adjustments "may result in payments substantially greater than amounts accrued," and "could have a material impact" on the company's financial statements. *Id.* at 338–43.

The *Roofers* court did not find Amgen's failure to disclose the back taxes and penalties to be a material omission because these were amounts are quantifiable. *Contra* Dkt. # 55 at 10. Rather, the court found the omission of this information to be material because "*[t]he magnitude of the Company's potential liability to the IRS . . . was enormous[.]*" *Roofers*, 751 F. Supp. at 348 (emphasis added). Put differently, it was the "sheer size of the potential liability Amgen was

ORDER - 7

facing" that rendered the company's "vague characterizations of the amounts the IRS was seeking as 'significant,' 'substantial,' and potentially 'material'" neither "'clear' nor 'complete.'" *Id.* (quoting *Macquarie*, 601 U.S. at 263). And the court said Amgen's "omission of the $10.7 billion potential liability or other information from which investors could accurately assess the true nature of the IRS dispute concealed the extent of the risk the company was facing, making its use of vague qualifiers like 'significant' and 'substantial' plausibly misleading." *Id.* Thus, *Roofers* stands for the familiar proposition that withheld quantifiable information—in certain circumstances—can be a material omission. None of the caselaw identified by Plaintiff says that withheld quantifiable information is necessarily a material omission. *Contra* Dkt. # 55 at 10 ("[W]hen material facts can be quantified, the federal securities laws prohibit substituting vague characterizations that are "neither 'clear' nor 'complete,'" and leave investors "in the dark.") (quoting *Roofers*, 751 F. Supp. 3d at 348).

    The circumstances here demonstrate the statement, "Goldman Sachs Investment Banking has an existing lending relationship with Rocket and/or its subsidiaries" does not contain a material omission and is not misleading. *See* Dkt. # 4 at 76. Nobody denies that Goldman Sachs and Rocket did, in fact, have a lending relationship. And Plaintiff does not allege that the magnitude of the lending relationship between Goldman Sachs and Rocket was so large that it affected Goldman Sachs's incentives as Redfin's financial advisor. Plaintiff also fails to present evidence that suggests a reasonable shareholder would have considered the Supplemental Disclosures and other information released after the Proxy to be important in deciding how to vote on the merger. In fact, shareholders were provided with this information before the merger vote and about 98.85% of shares still voted for the merger. *See* Redfin Corporation, Current Report (Form 8-K/A) (June 4, 2025), available at https://tinyurl.com/3f5pcts3. This result lends further support to the conclusion that a reasonable shareholder would not have considered this

information to be material. Plaintiff therefore does not identify a material omission or misleading statement in the Proxy about the lending relationship between Goldman Sachs and Rocket.

Plaintiff similarly fails to show that the initial nondisclosure of the NOL Projections in the Proxy was a material omission. He again misreads caselaw to say there is a "five percent threshold" for materiality of valuation analyses. Dkt. # 55 at 12 (citing *S.E.C. v. Fuhlendorf*, 2011 WL 999221, at *7 (W.D. Wash. Mar. 17, 2011)). On the contrary, "quantifying, in percentage terms, the magnitude of a misstatement is only the beginning of an analysis of materiality." *Fuhlendorf*, 2011 WL 999221, at *7 (citing *Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (rejecting the defendant's proposal of a bright line rule regarding materiality)). Plaintiff's sole argument is that the omission of the NOL Projections was material because they "constituted nearly 10% of the low end of the present value generated by the DCF Analysis of $6.37 per share." *Id.* at 12. Yet Redfin's existing NOLs are disclosed in its quarterly SEC filings. *See* Dkt. # 38-2 at 27. The Proxy disclosed how the present value of Redfin's NOLs contributed to Goldman Sachs's DCF Analysis. Dkt. # 4 at 74. And Plaintiff takes no issue with the ultimate result of the DCF Analysis either. *See generally* Dkt. ## 55, 60. Plaintiff therefore does not show that the omission of the NOL Projections was material.

What is more, Plaintiff does not grapple with the large body of caselaw that says, "criteria used to select the ranges, multiples, or transactions that the financial advisors use in their analyses are not material." *Visser v. Vitamin Shoppe, Inc.*, 2021 WL 6010349, at *6 (D.N.J. Dec. 17, 2021) (quoting *Dias v. Purches*, 2012 WL 4503174, at *9 (Del. Ch. Oct. 1, 2012)); *see, e.g.*, *Serion v. Nuance Commc'ns, Inc.*, 2022 WL 356695, at *2 (S.D.N.Y. Feb. 7, 2022) ("[A] disclosure statement must contain only a 'fair summary' of the underlying bases for a financial

advisor's fairness opinion. Investors, as a general matter, are *not* entitled to disclosures sufficient to make [their] own independent assessment of a stock's value.") (quoting *Sodhi v. Gentium S.p.A.*, 2015 WL 273724, at *5 (S.D.N.Y. Jan. 22, 2015)). In addition, the NOL Projections were also disclosed to shareholders before the merger vote, and 98.85% of shares still voted for the merger. *See* Redfin Corporation, Current Report (Form 8-K/A) (June 4, 2025), available at https://tinyurl.com/3f5pcts3. This further supports the Court's conclusion that Plaintiff does not demonstrate the disclosure of the NOL Projections "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *See TSC*, 426 U.S. at 449.

In sum, Plaintiff does not establish that any of the Supplemental Disclosures were material or that the Proxy contained a material omission. So even considering the evidence in the light most favorable to Plaintiff, his Section 14(a)[2] claim lacked sufficient merit to survive a motion to dismiss on the pleadings. For the same reasons, he is not entitled to fees and expenses under Delaware law. Because he does not show that any of the Supplemental Disclosures were material or that the Proxy contained a material omission, his claim for breach of fiduciary duty under Delaware law was not meritorious when filed.[3]

---

[2] Liability for a Section 20(a) claim is "obviously derivative of liability" under some other provision of the Exchange Act. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253 n.2 (2010). The only other provision of the Act that Plaintiff brings a claim under is Section 14(a), so Plaintiff does not show sufficient merit to warrant attorney fees for his Section 20(a) claim either.

[3] Since Plaintiff is not entitled to fees and expenses under federal or Delaware law, the Court does not reach the issue of whether his requested fees are reasonable.

## IV

## CONCLUSION

For all these reasons, the Court DENIES the Motion for Attorney Fees. Dkt. # 55.

Dated this 17th day of November, 2025.

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 11